# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **K.R. and J.R.**

**No. 17-1012** (Wood County 15-JA-54 and 55)

**FILED**

**April 9, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioners R.J.-1 and R.J.-2, the children's maternal grandparents, by counsel Judith A. McCullough, appeal the Circuit Court of Wood County's October 20, 2017, order denying them placement of K.R. and J.R.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Katrina M. Christ, filed a response on behalf of the children in support of the circuit court's order. Father S.R., by counsel Wells H. Dillon, filed a response in support of the circuit court's order. On appeal, petitioners argue that the circuit court erred in denying them an evidentiary hearing on their motion concerning their alleged status as psychological parents and in denying them the opportunity to participate in the children's in camera interviews.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because petitioners share the same initials, we will refer to them as R.J.-1 and R.J.-2 throughout this memorandum decision.

[2]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective on May 20, 2015. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below. It is important to note, however, that the abuse and neglect statutes underwent minor stylistic revisions and the applicable changes have no impact on the Court's decision herein.

In April of 2015, the DHHR filed an abuse and neglect petition against the mother and her husband that alleged they subjected the children to domestic violence. These allegations stemmed, in part, from an incident in which the husband physically attacked the mother and brandished a knife while he threatened to kill her, all in the children's presence. As the petition related to the father, it indicated that, due to his incarceration, he received no parenting time with the children following the parents' divorce in 2012. However, the family court that entered the final divorce decree indicated that the father could petition to amend the parenting plan upon his release and completion of certain services. During the abuse and neglect proceedings, the DHHR did not make allegations against the father, although he was not considered for placement upon the children's initial removal from the mother. At that time, the children were placed with the maternal grandparents, petitioners herein.

During an adjudicatory hearing in July of 2015, the circuit court ordered that the father have additional visitation with the children, including overnight visits, in order to facilitate the children's gradual transition from petitioners' home to that of the father. In August of 2015, petitioners filed a motion to intervene and for custody. In support, petitioners alleged that they were the children's psychological parents and requested that the circuit court reconsider its prior order transitioning custody to the father.

In September of 2015, the circuit court held a hearing on petitioners' motion and ultimately found that they did not qualify as the children's psychological parents. The circuit court further ordered that petitioners be provided notice of all future multidisciplinary team meetings and the opportunity to attend the same, but did not permit them to remain present when issues specific to the parents were addressed. The circuit court also declined to transfer full custody of the children to the father at this time because of concerns over requiring the children to change schools while the mother was participating in an improvement period. It did, however, award the father overnight visits every weekend. Following this order, the DHHR and the guardian both reported that petitioners did not wish to facilitate a relationship between the father and the children and created issues with allowing visits as ordered.

In June of 2016, the circuit court awarded custody of the children to the mother, following her successful completion of her improvement period. Thereafter, the father filed a motion for contempt that alleged the mother refused him visits with the children as ordered. However, prior to a hearing on the motion, the mother died.[3] Subsequent to the mother's death, petitioners refused the father visitation. They further obtained a temporary protective order in the Magistrate Court of Ritchie County to prohibit the father from having contact with the children. In support of their petition for a protective order, petitioners alleged that the father murdered the

---

[3]According to the record, the mother's death was investigated as a homicide. It also appears from the record that, following the mother's death, the children again resided with petitioners.

mother and that K.R. was afraid of him.[4] The Family Court of Ritchie County eventually denied the protective order after the court became aware of the pending abuse and neglect proceedings in the Circuit Court of Wood County.

In May of 2017, petitioners renewed their motion for intervention and custody of the children and alleged the children did not wish to live with the father. Petitioners again asserted their status as psychological parents in support of these motions. Petitioners also filed a motion to modify the circuit court's prior dispositional order. That same month, the circuit court held a hearing on the motions, at which time petitioners also moved to remove the guardian on the grounds that he previously represented the father in an unrelated matter. The circuit court granted petitioners' motion to intervene and to replace the guardian, although it did not rule on petitioners' remaining motions.

In July of 2017, the circuit court held a hearing during which it encouraged the parties to come to a resolution on custody through mediation. After these efforts failed, the circuit court issued a temporary order directing that the children receive counseling, the father receive increased visitation, and the parties report on the status of a final parenting plan in September of 2017. Thereafter, the guardian filed a motion that alleged the current parenting plan was no longer in the children's best interest and asked that the children be permitted to speak with the circuit court concerning the plan. The following month, the guardian filed a report that recommended the children be placed with the father, with petitioners receiving visitation as long as they cooperated.

In October of 2017, the circuit court held a hearing on the guardian's motion and conducted in camera interviews with both children. The circuit court then issued an order addressing the children's placement and reiterating that the father was never found to be an abusing parent. The circuit court also reiterated that petitioners did not qualify as the children's psychological parents. The circuit court further noted that it had been two years since it ordered that the children be transitioned into the father's home and that a "principal factor" in the failure to achieve such transfer was "[petitioners] and their lack of co-operation in effecting such gradual transition." Ultimately, the circuit court awarded the father full custody and required petitioners to file a motion for visitation if they sought the same so that visitation did not "substantially interfere with the parent-child relationship." It is from the resulting order that petitioners appeal.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the

---

[4]According to the record, the father was eventually ruled out as a suspect in the mother's death after it was established that he was at work in Morgantown, West Virginia, at the time of her death.

evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

First petitioners argue that the circuit court erred in denying them an evidentiary hearing on their May of 2017 motion to be named the children's psychological parents.[5] The Court,

_____

[5]In support of this assignment of error, petitioners assert that several of the circuit court's factual findings from its resulting order are erroneous. However, petitioners fail to establish how these factual findings, made after the hearing on their second motion asserting their alleged status as psychological parents, in any way support their assertion that they should have been entitled to an evidentiary hearing on their motion. Instead, petitioners appear to argue that such findings would not have been made had the circuit court permitted them an evidentiary hearing on their second motion. The Court, however, declines to address these allegations of erroneous findings because they are irrelevant to the assignment of error at issue, especially in light of the fact that the record shows conclusively that petitioners did not qualify as the children's psychological parents.

We have held as follows:

"A psychological parent is a person who, on a continuing day-to-day basis, through interaction, companionship, interplay, and mutuality, fulfills a child's psychological and physical needs for a parent and provides for the child's emotional and financial support. The psychological parent may be a biological, adoptive, or foster parent, or any other person. The resulting relationship between the psychological parent and the child must be of substantial, *not temporary*, duration and must have begun with the consent and encouragement of the child's legal parent or guardian . . . ." Syl. Pt. 3, *In re Clifford K.*, 217 W.Va. 625, 619 S.E.2d 138 (2005).

Syl. Pt. 4, in part, *In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015) (emphasis added). Here, it is clear that petitioners never provided care for the children for any duration other than a temporary one and never with the consent and encouragement of the children's parents. Instead, petitioners were granted temporary custody of the children pursuant to the abuse and neglect proceedings

(continued . . . )

however, finds that petitioners are entitled to no relief in this regard because (1) the record shows that the circuit court granted them an evidentiary hearing on their status as psychological parents pursuant to their August of 2015 motion and (2) petitioners failed to preserve the issue for appeal. As noted above, petitioners filed two separate motions asserting their status as psychological parents. Following the first motion, the circuit court held an evidentiary hearing in September of 2015.[6] According to the record, the circuit court ruled that "the evidence did not establish [petitioners] are psychological parents of the children . . . ." As such, it is disingenuous for petitioners to argue that they did not receive an evidentiary hearing on the issue of whether they constituted the children's psychological parents.

Petitioners further allege that they had multiple witnesses prepared to testify to the issue at a hearing in July of 2017, but the circuit court ultimately required the parties to engage in mediation instead of presenting evidence. Thereafter, petitioners assert that they lacked sufficient notice of the circuit court's scheduled hearings in October of 2017 to secure the presence of these witnesses. However, petitioners fail to cite to the record to illustrate that they objected to the alleged lack of notice or otherwise requested a continuance in order to secure their witnesses' presence. "'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W.Va. Dep't of Motor Vehicles*, 223 W.Va 818, 679 S.E.2d 650 (2009). For these reasons, we find that petitioners are entitled to no relief in this regard.

Finally, petitioners argue that the circuit court erred in denying them the opportunity to participate in or attend the in camera interviews of the children. According to petitioners, the circuit court failed to comply with Rule 8 of the Rules of Procedure for Child Abuse and Neglect Proceedings in that it did not permit them or their counsel to attend or participate in the interviews, submit questions to be asked during the interviews, or otherwise make a recording of

---

with the express intention of returning the children to either parent at such time as that placement was appropriate. Moreover, the father sought to enforce his right to custody of the children at several points during the proceedings, thereby evidencing his lack of consent to, and encouragement for, the children's placement with petitioners. Accordingly, regardless of whether the factual findings at issue are erroneous, the record clearly shows that petitioners were not the children's psychological parents. Therefore, it is unnecessary to address the allegation that the circuit court made erroneous findings of fact that are wholly unrelated to the specific argument that the failure to hold an evidentiary hearing on the motion constituted error.

[6]On appeal to this Court, petitioners failed to include the following documents in their appendix: (1) the transcript of the hearing on their motion to intervene and for custody, in which they asserted their alleged standing as psychological parents, and (2) the resulting order ruling on this motion. However, the circuit court's final order contains several detailed findings of fact regarding the prior motion, hearing, and subsequent ruling.

the interviews available prior to resuming the evidentiary hearing.[7] Although it is uncontested that the circuit court did not strictly comply with this rule, the Court, nonetheless and under the specific limited circumstances of this case, finds that petitioners are not entitled to relief in this regard.

We have previously held that

"[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W.Va. 390, 686 S.E.2d 41 (2009). Here, petitioners argue that "[t]he language [in Rule 8(b)] regarding counsel's right to be present or to materially participate in such interviews is mandatory, not discretionary . . . ." We do not agree. The plain language of that rule permits the circuit court to exclude the parties' attorneys "when the court determines that the presence of attorneys will be especially intimidating to the child witness." Here, there is no specific finding regarding such a determination, but the rule is clear that the circuit court is afforded discretion in excluding counsel, contrary to petitioners' argument. Moreover, the rule

---

[7]Rule 8(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings provides as follows:

The court may conduct in camera interviews of a minor child, outside the presence of the parent(s). The parties' attorneys shall be allowed to attend such interviews, except when the court determines that the presence of attorneys will be especially intimidating to the child witness. When attorneys are not allowed to be present for in camera interviews of a child, the court shall, unless otherwise agreed by the parties, have the interview electronically or stenographically recorded and make the recording available to the attorneys before the evidentiary hearing resumes. Under exceptional circumstances, the court may elect not to make the recording available to the attorneys but must place the basis for a finding of exceptional circumstances on the record. Under these exceptional circumstances, the recording only will be available for review by the Supreme Court of Appeals. When attorneys are present for an in camera interview of a child, the court may, before the interview, require the attorneys to submit questions for the court to ask the child witness rather than allow the attorneys to question the child directly, and the court may require the attorney to sit in an unobtrusive manner during the in camera interview. Whether or not the parties' attorneys are permitted to attend the in camera interview, they may submit interview questions and/or topics for consideration by the court.

permits the circuit court to elect not to make a recording of the interview available to the parties "[u]nder exceptional circumstances" as set forth on the record. Again, the circuit court did not make the required findings, but the rule clearly grants the circuit court discretion in making the recording available, contrary to petitioners' argument. Further, when the parties' attorneys are excluded, they are permitted to submit interview questions for the circuit court's consideration. Nothing in the rule requires the circuit court to ask any questions submitted, again reinforcing the circuit court's discretion in handling in camera interviews with minors.

Further, the record is clear that petitioners suffered no prejudice as a result of the circuit court's error. There is no indication that the father's attorney was permitted to participate in the interviews or otherwise submit questions for the same. It appears that only the children's guardian was permitted to attend the interviews. Moreover, the evidence obtained from the interviews strongly favored petitioners. Specifically, the record shows that the in camera interviews "indicate[d] that a close, affectionate relationship between [the father] and his sons . . . has not been fully achieved." Further, the record shows that during his in camera interview, K.R. made statements that evidenced his preference to be placed with petitioners over his father. In short, this testimony supported petitioners' position that they should be the permanent placement for the children. As such, we find, under the specific circumstances of this case, that the circuit court's failure to strictly comply with Rule 8(b) does not constitute a substantial frustration or disregard of the applicable rules and statutes such that vacation of the circuit court's final order is warranted.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 20, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  April 9, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker

7